UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DAVID SCOTT HARRISON,

Plaintiff,

v.

MICHAEL G. WHEAT, ASSISTANT US ATTORNEY,

Defendant.

Case No.: 17-cv-2404-AJB-BLM

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (Doc. No. 13-1)**

**ORDER ON OTHER MOTIONS (Doc. Nos. 10, 21)**

Before the Court is Michael G. Wheat's motion to dismiss Davis Scott Harrison's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 13-1.) Having reviewed the parties' arguments and controlling legal authority, and pursuant to Civil Local rule 7.1.d.1, the Court finds the matter suitable for decision on the papers and without oral argument. Accordingly, the **March 22, 2018** motion hearing is vacated. Because Wheat is not a state actor and possesses prosecutorial immunity against Harrison's failed *Bivens* claim, the Court **GRANTS** Wheat's motion to dismiss.

## I. BACKGROUND

Harrison, a pro se litigant, brought this suit against Wheat. (Doc. No. 1-2.) On February 10, 2015, Harrison sent a "syrupy-sweet" letter to U.S. District Court Judge, Larry A. Burns, as well as Wheat. (*Id.* at 6.) Exercising his right to free speech, Harrison

petitioned the government for redress of his grievances, namely the illegitimacy of his 1988-'89 federal convictions. (*Id.*) The letter did not contain any threatening language nor an intent to commit violence or criminal harm. (*Id.*) Wheat describes this letter as arguing "that the Supreme Court's *Jones* decision rendered his conviction null and void." (Doc. No. 13-1 at 3.)

On March 10, 2015, Wheat sent Harrison a "retaliatory" letter in response. (*Id.* at 7.) Harrison suggests that Wheat's letter threatened retaliatory actions by reporting him to all "appropriate investigative agencies" for the purpose of "monitor[ing Harrison's] activities." (*Id.*) Harrison claims that this retaliatory language encased him in a "thick coat of ice" and left him fearful of being transferred to a more restrictive facility. (*Id.*) He contends that Wheat's retaliation against him served no reasonable or legitimate penological or government interest. (*Id.* at 8.)

## II. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526

17-cv-2404-AJB-BLM

(1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664.

Additionally, pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers" because pro se litigants are more prone to making errors in pleading than litigants represented by counsel. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotations omitted). Thus, the Supreme Court has stated that federal courts should liberally construe the "'inartful pleading' of pro se litigants." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (quoting *Boag v. MacDougall*, 454 U.S. 364, 365 (1982)).

## III. DISCUSSION

Harrison brings his complaint under *Bivens* for first amendment retaliation. (Doc. No. 1-2 at 5.) In a footnote, he states the claim is "[f]iled under the Civil Rights Act, 42 USC § 1983, this case is technically a suit pursuant to *Bivens* . . . ." (*Id.* at fn 1.) Because Harrison is pro se, the Court construes his filings liberally and will discuss actions arising under both *Bivens* and § 1983—as they are separate vehicles to bring a suit in federal court. In his dismissal motion, Wheat argues the Court should dismiss Harrison's *Bivens* claim because it fails to meet the two-prong test. Wheat also argues, nevertheless, he is entitled to prosecutorial immunity. Wheat does not address the § 1983 claim, however, the Court will do so sua sponte.

### 1. Harrison's Request for a New *Bivens* Remedy

Wheat argues a claim under *Bivens* is unwarranted for a First Amendment violation. (Doc. No. 13-1 at 4.) Wheat claims the Supreme Court has cautioned against expanding constitutional claims beyond the three scenarios found in *Bivens* and its progeny: *Davis*, and *Carlson*. (*Id.* at 6.) Therefore, because this case differs from the three previous Supreme Court *Bivens* cases, Wheat states that a *Bivens* remedy should not be granted. (*Id.*) Harrison agrees with Wheat in that the court in *Ziglar* cautioned against expanding constitutional claims. (Doc. No. 17 at 19.) However, Harrison argues that because Congress has not provided an alternative remedy and has not explicitly declared anything, that this

3

Court has the power to grant him relief. (*Id.*) Additionally, by granting relief, Harrison claims that there are no special factors counseling hesitation against a judicially created remedy. (*Id.* at 22). Furthermore, Harrison claims that the cases Wheat used to support his claim are irrelevant because "they do not address the right of every individual to protection of the laws, whenever he suffers an injury." (*Id.* at 21.)

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, the Court established an implied private right of action for tortious deprivation of constitutional rights against federal officials in their personal capacity. 403 U.S. 388, 389 (1971). However, in more recent times, the Supreme Court has disfavored extending the *Bivens* remedy to new contexts not previously reached. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017); *Iqbal*, 556 U.S. at 675 (expanding the *Bivens* remedy beyond these three scenarios is a "disfavored" judicial activity); *Corr. Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (stating the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants.").

If a *Bivens* case is "different in a meaningful way" from one of the three established *Bivens* cases, it is considered a "new *Bivens* context." *Ziglar*, 137 S. Ct. at 1859–60. The *Ziglar* court listed several ways a case could present as a "new *Bivens* context:"

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. When the court determines a case presents a "new *Bivens* context," then a special factors analysis is performed. *Id.* at 1859–60. If there are "special factors counselling hesitation in the absence of affirmative action by Congress," then a *Bivens* remedy will not be available. *Id.* at 1857 (quoting *Bivens*, 403 U.S. at 396)). "Though the Court has not defined the phrase 'special factors counseling hesitation' . . . '[t]he necessary

4

inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Jones v. Hernandez*, Case No.: 16-CV-1986 W (WVG), 2017 WL 5194636, at *9 (S.D. Cal. Nov. 9, 2017) (quoting *Ziglar*, 137 S. Ct. at 1857–58).

Harrison's cause of action for first amendment retaliation has been expressly recognized by the Ninth Circuit twice, but never by the Supreme Court. In *Gibson v. United States*, the Court stood with other circuits in allowing a first amendment retaliation claim to proceed when FBI agents allegedly curbed Gibson's political protected speech "by investigating her, tapping her phone, passing defamatory information to her employer, and attempting to entrap her in a drug transaction." *Martin v. Naval Investigative Serv.*, 10-CV-1879 WQH (MDD), 2011 WL 13142108, at *7 (S.D. Cal. Aug. 3, 2011) (Hayes, J.), aff'd, 539 Fed. Appx. 830, 832 (9th Cir. 2013); *Gibson*, 781 F.2d 1334, 1341–42 (9th Cir. 1986). In *Martin*, the plaintiff alleged a federal official acted with motive to impermissibly curb his truthful testimony. 2011 WL 13142108. Because the court found this was analogous to the facts in *Gibson*, Martin's case did not present a new factual and legal context, and the court allowed the *Bivens* claim to continue. *Id.* at *8.

Harrison's case differs from both of these Ninth Circuit cases. Harrison's letter requested "redress of his grievances, namely the illegitimacy of his 1988-'89 federal convictions." (Doc. No. 1-2 at 6.) Wheat's response—retaliatory or not—did not curb any protected political speech or truthful testimony as was the case in both *Gibson* and *Martin*. Moreover, Wheat's letter did not rise to the levels of intrusion Gibson was subjected to. Although the complaint similarly alleges First Amendment Retaliation, the mechanism of injury (retaliation when a pro se inmate writes a prosecutor a letter challenging his prior conviction) presents a new *Bivens* context. To allow Harrison a *Bivens* remedy, then, the Court would need to weigh the "special factors counselling hesitation." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). However, the Court need not begin that analysis because the

Court holds, below, that Wheat is entitled to prosecutorial immunity. Thus, even if the Court found no "special factors counselling hesitation," his claim would ultimately fail.

## 2. Wheat's Prosecutorial Immunity Shields Him From Liability

Wheat argues that absolute prosecutorial immunity protects his conduct. (Doc. No. 13-1 at 9.) Wheat claims that he was acting in his "role as advocate" for the United States when he sent the letter to Harrison. (*Id.*) Wheat argues that multiple cases have held that absolute immunity protects conduct that plaintiffs, like Harrison, perceived as threatening prosecution. (*Id.* at 10). Additionally, though prosecution of Harrison's case ended long ago, Wheat claims that prosecutorial immunity was stretched far into the case and into its afterlife because of Harrison's repeated habeas cases and other challenges Harrison brought after his case ended. (*Id.*)

Harrison responds by stating that Wheat's retaliatory letter was not part of initiating a prosecution or of presenting a criminal case, and so, is not protected by prosecutorial immunity. (Doc. No. 17 at 22.) Additionally, Harrison claims that the cases Wheat utilized to support his point that retaliatory letters are protected by absolute immunity have been misstated. (*Id.* at 24.) Harrison argues that prosecutorial immunity is denied to federal agents who send retaliatory letters. (*Id.* at 25).

"Even in circumstances in which a *Bivens* remedy is generally available, an action under *Bivens* will be defeated if the defendant is immune from suit." *Hui v. Castaneda*, 559 U.S. 799, 807 (2010) (citing *Bivens*, 403 U.S. at 397–98). "Federal prosecutors enjoy absolute immunity for 'initiating a prosecution and in presenting the State's case. . . .'" *Loumiet*, 255 F. Supp. 3d at 91 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)). Absolute immunity fully applies when the conduct at issue is "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343–44 (2009) (quoting *Imbler*, 424 U.S. 409 at 430). Absolute immunity stretches far into a case and into its afterlife. *Neville v. Classic Gardens*, 141 F. Supp. 2d 1377, 1383 (S.D. Ga. 2001) (citing *Allen v. Thompson*, 815 F.2d 1433, 1434 (11th Cir. 1987)). "However, an act is not immune merely because it is performed by a prosecutor." *Loumiet*, 255 F.

Supp. 3d at 91. Absolute immunity may not apply when a prosecutor is not acting as an officer of the court, but is engaged in other tasks, such as investigative or administrative. *Van de Kamp*, 555 U.S. at 342. However, absolute immunity does apply when a prosecutor threatens further criminal prosecutions. *Marx v. Gumbiner*, 855 F.2d 783, 789 n.10 (11th Cir. 1988); *see also Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir. 1979).

First, Harrison claims that Wheat's retaliatory letter, which included language threatening further criminal prosecutions, is not protected under absolute immunity. (Doc. No. 17 at 25–26.) Wheat, on the other hand, claims that his prosecutorial actions, done in the role as an advocate for the federal government, are protected under absolute immunity. (Doc. No. 13-1 at 9.) This Court agrees. The type of conduct Wheat was involved in, threatening further criminal prosecutions, is protected under absolute immunity. *Marx*, 855 F.2d at 789 n.10; *see also Henzel*, 608 F.2d at 657.

Second, Harrison also claims that because Wheat's letter was written so far removed from the judicial proceedings—roughly 30 years—he is not protected under the absolute immunity's language of "intimately associated with the judicial phase of the criminal process." (Doc. No. 17 at 23–24.) However, Wheat alleges that Harrison had extended the life of his 1988-'89 criminal judicial proceedings "through his own actions, via repeated habeas cases and other challenges, as well as direct correspondence with the Court and the U.S. Attorney's Office." (Doc. No. 13-1 at 9.) Therefore, according to Wheat, Harrison had stretched the judicial proceeding to the letter's date; and so, Wheat remains qualified for absolute prosecutorial immunity. (*Id.*) The Court finds reasonable that due to Harrison's own actions, Wheat is still entitled to prosecutorial immunity. Moreover, absolute immunity reaches far after a case's conclusion, well into its afterlife, and Harrison's case enjoyed quite the afterlife. *Neville*, 141 F. Supp. 2d at 1383.

Thus, because Harrison—by continuously filing challenges—had continued the judicial proceedings of the 1988-'89 case, Wheat's letter was still intimately associated with the judicial phase. The Court finds prosecutorial immunity attaches to Wheat's actions.

### 3. Harrison Failed to Name an Appropriate Defendant Under § 1983

Although it is not expressly clear that Harrison intended to bring a § 1983 claim, the Court is giving him every benefit of the doubt by liberally construing his complaint as such. A § 1983 cause of action entitles an injured person to money damages if a *state official* violates his or her constitutional rights. *Ziglar*, 137 S. Ct. at 1854. The statute specifically limits suits to officials of a state, territory, or the District of Columbia. It reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, **of any State or Territory or the District of Columbia**, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C.A. § 1983 (emphasis added).

Here, Harrison brought a § 1983 cause of action against Wheat, who at the time was acting in his capacity as an Assistant U.S. Attorney, a *federal official*. (Doc. No. 1-2 at 5.) Harrison has not pled that at any time Wheat acted as a state official, or was acting in a territory or the District of Columbia. Thus, to the extent a § 1983 claim was asserted in the complaint, the Court finds it fails.

## IV. OTHER MOTIONS

Harrison filed a motion requesting permission to appear at the March 22 hearing, for counsel appointment, or to vacate the hearing. (Doc. No. 21.) Because the Court has vacated the hearing, the Court **DENIES AS MOOT** his requests to attend the hearing or vacate the hearing.

Harrison makes no argument in support of his counsel motion beyond the request itself. (Doc. No. 21 at 5.) There is no constitutional right to counsel in a civil case. *U.S. v. 30.64 Acres of Land*, 795 F.2d 796, 801 (9th Cir. 1986). While this Court has discretion to appoint counsel, it is only done in exceptional circumstances after weighing the plaintiff's ability to articulate his claim and the complexity of the issues at hand. 28 U.S.C. § 1915(d); *Mallard v. U.S. Dist. Court of Iowa*, 490 U.S. 296, 301–08 (1989); *Wilborn v. Escalderon*,

798 F.2d 1328, 1331 (9th Cir. 1986). Harrison has proven adept at litigating his case. His response to this dismissal motion, for example, included a table of contents, table of authorities, and nearly 20 pages of argument. (Doc. No. 17.) In this document, Harrison shows he is capable of legal analysis and proves he has a strong grasp of his case's facts. (*Id.*) Moreover, the complexity of issues here does not rise to levels of exceptionality required for appointment of counsel. Thus, the Court **DENIES** Harrison's counsel request.

## V.     CONCLUSION

Because Harrison failed to state a claim under § 1983 and *Bivens*, the Court **GRANTS** Wheat's motion to dismiss with prejudice. (Doc. No. 13-1.) The Court finds any amendment would be futile, as Harrison cannot overcome Wheat's prosecutorial immunity. Thus, the Court **ORDERS** the Court Clerk to close the case.

Because the Court is dismissing Harrison's complaint, the Court **FINDS AS MOOT** Harrison's motion for service, in forma pauperis status, and scheduling order. (Doc. No. 10.) Moreover, the Court **DENIES** his request for counsel and **DENIES AS MOOT** his other hearing requests. (Doc. No. 21.)

**IT IS SO ORDERED**.

Dated:  March 1, 2018

Hon. Anthony J. Battaglia
United States District Judge